## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CREEKSTONE FARMS PREMIUM BEEF,
LLC,  a Delaware Limited Liability
Company,

        *Plaintiff,*

vs.                                     Case No. 6:14-CV-01036-EFM-KGS

DECISIONS ENERGY MANAGEMENT
d/b/a/ KEYSTONE LLC, a/k/a DECISIONS
ENERGY MANAGEMENT d/b/a
KEYSTONE, a/k/a DECISIONS ENERGY
MANAGEMENT d/b/a KEYSTONE
ENERGY, DECISIONS ENERGY
MANAGEMENT, LLC, KEYSTONE
ENERGY, INC., KEYSTONE ENERGY,
LLC, DOUGLAS G. HAUNSCHILD and
PAUL L. COLE, SR.,

        *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Creekstone Farms Premium Beef, LLC ("Plaintiff") seeks monetary damages,

both compensatory and punitive, and attorney's fees from Defendants Decisions Energy

Management (d/b/a Keystone, LLC); Decisions Energy Management (d/b/a Keystone);

Decisions Energy Management (d/b/a Keystone Energy, a/k/a KeyStone Energy); Decisions

Energy Management, LLC; Keystone Energy, Inc.; Keystone Energy, LLC;[1] Douglas G. Haunschild ("Haunschild"); and Paul L. Cole, Sr. ("Cole") for breach of contract, implied indemnity, and fraud for damages arising out of a contract between the parties. This matter is before the Court on Plaintiff's Motions for Default Judgment (Docs. 17 and 26).[2] The Court conducted an evidentiary hearing on the matter on July 3, 2014. For the reasons stated below, Plaintiff's Motions are granted.

## I.      Parties

Plaintiff Creekstone Farms Premium Beef, LLC is a limited liability company organized pursuant to the laws of Delaware and registered to do business in Kansas. Its principal place of business is in Arkansas City, Kansas.

Defendant Decisions Energy Management, LLC is or was a Texas limited liability company with a principal place of business in Richardson, Texas.

Defendant Keystone Energy, LLC is a Florida limited liability company with a principal place of business in Miami, Florida.

Defendants Decisions Energy Management (d/b/a Keystone LLC), Decisions Energy Management (d/b/a Keystone), Decisions Energy Management (d/b/a Keystone Energy, a/k/a KeyStone Energy), and Keystone Energy, Inc. are all believed to be fictitious business entity names used at various times by Defendants Douglas G. Haunschild and/or Paul L. Cole, Sr.

Defendant Douglas G. Haunschild is believed to be a resident of Texas. At all times material to Plaintiff's Complaint and Motions for Default Judgment, Haunschild held himself out

---

[1] For ease of discussion, the named corporate defendants will collectively be referred to as "Keystone."

[2] As per Plaintiff, Defendant Paul L. Cole, Sr. is not a party to the Motions for Default Judgment. Therefore, any reference to "Defendants" does not include Paul L. Cole, Sr.

to be the President and Chief Executive Officer of KeyStone Energy, with an office in the "Corporate Headquarters."

Defendant Paul L. Cole, Sr. is believed to be a resident of Florida.  At all times material to Plaintiff's Complaint and Motions for Default Judgment, Cole was held out to be the "Managing Director, East Coast" of KeyStone Energy.

## II.    Factual and Procedural Background[3]

Plaintiff processes and sells beef from a facility in Arkansas City, Kansas.  Given its requirement for cold storage facilities and the use of other mechanical processing equipment, electricity costs are significant ongoing expenses of Plaintiff's business.  As such, Plaintiff is constantly researching and investigating possible methods to reduce these costs.  On December 14, 2011, Defendants approached Plaintiff with a proposal for a "Technology Retrofit" of Plaintiff's Arkansas City facility whereby Defendants would install and implement various methods of energy reduction for the facility.  On April 3, 2012, the parties entered into an "Energy Services Performance Contract," (the "Contract") under which the agreed compensation due was $1,367,529.00, to be paid in twenty-five percent (25%) increments, with the final twenty-five percent increment paid upon project completion.

In addition to its basic provisions, the Contract also contained a Performance Guarantee, whereby Defendants guaranteed that, in each of the first two years after completion of the project, Plaintiff would save at least $659,986.92 in energy costs (the "guaranteed energy savings").  In the event that Plaintiff did not realize these savings during each of the first two years following completion of the project, Defendants would pay to Plaintiff the difference

---

[3] Because this is a Motion for Default Judgment for which no response has been filed by Defendants, the Court adopts Plaintiff's versions of the facts.

between the guaranteed energy savings and Plaintiff's actual energy savings. To ensure this payment, Defendants agreed to obtain insurance to fund their potential liability (the "energy savings warranty"). To fulfill this obligation, Defendants retained the services of insurance broker JonesBirdsong, LLP who in turn retained Energi Insurance Services, Inc. ("Energi") to provide the actual energy savings warranty. Sometime after the Contract was signed, the parties agreed to split the cost of the energy savings warranty. Plaintiff's portion of the premium was $24,750, which Plaintiff forwarded to Defendants on June 22, 2012, in addition to its second twenty-five percent payment. Plaintiff alleges that Defendants failed to remit any portion of the insurance premium to Energi. Furthermore, Plaintiff claims that Defendants were unable to obtain the energy savings warranty because they failed to submit to Energi the required three years of Keystone's audited financial statements.[4] In January 2013, Energi returned Plaintiff's premium check, uncashed, to Defendants. Defendants never returned this check to Plaintiff and Plaintiff was unaware that Defendants had been unable to secure the energy savings warranty.

At some point after Plaintiff had paid seventy-five percent (75%) of the contract price, Defendants requested a payment of $200,000 to pay two of their subcontractors, namely Graham Electric Co. and Mining Controls, LLC (d/b/a Gilbert Electrical Systems & Products). Plaintiff forwarded this payment to Defendants on June 13, 2013. Plaintiff later learned that Defendants failed to forward this payment to either subcontractor. As such, Graham Electric and Gilbert Electrical each filed subcontractor's mechanics liens. These liens remain unsatisfied as of the date of this judgment.

---

[4] During oral argument, Plaintiff's counsel suggested that the reason Defendants failed to submit these audited financial statements was because, by that point, Keystone no longer had a corporate existence.

Defendants abandoned work on Plaintiff's facility in August 2013, after Plaintiff had paid seventy-five percent (75%) of the Contract amount, $24,750 for its portion of the energy savings warranty premium, and $200,000 to satisfy Defendants' subcontractors, for a total of $1,214,382.23. The work performed before Defendants' abandonment has yielded energy savings of approximately $200,000 per year, substantially less than the guaranteed energy savings.

On January 25, 2014, Plaintiff filed a Complaint against Defendants in the United States District Court for the District of Kansas. Defendants failed to respond. On February 28, 2014, Plaintiff filed a Motion for Entry of Default against Defendants Decisions Energy Management (d/b/a Keystone, LLC), Decisions Energy Management (d/b/a Keystone), Decisions Energy Management (d/b/a Keystone Energy, a/k/a KeyStone Energy), Decisions Energy Management, LLC; Keystone Energy, Inc., and Douglas G. Haunschild (Doc. 14), which was granted on March 5, 2014. Defendants again failed to respond. On March 26, 2014, Plaintiff filed a Motion for Entry of Default against Defendant Keystone Energy, LLC (Doc. 21), which was granted on March 27, 2014. Defendant failed to respond. Therefore, on March 18, 2014, and April 14, 2014, Plaintiff filed motions for default judgment (Docs. 17 and 26) against all named Defendants[5] for compensatory and punitive damages, seeking a total judgment of $2,259,342.97, assessed as follows: (1) $1,016,086.64 for breach of contract, which includes the total unrealized guaranteed energy savings and Plaintiff's cost to complete the unfinished project; (2) $243,256.33 for fraud, which includes the insurance premium, the payment to Defendants'

---

[5] This excludes Defendant Paul L. Cole, Sr.  *See* note 2, *supra*.

subcontractors, and prejudgment interest; and (3) $1,000,000 in punitive damages.[6] The Court conducted an evidentiary hearing on July 3, 2014, at which time it heard the testimony of Thomas H. Minton ("Minton"), Plaintiff's controller, and admitted into evidence the depositions of the designated representatives of JonesBirdsong and Energi as well as Plaintiff's other exhibits. Defendants failed to appear.

### III.   Jurisdiction

Plaintiff is a Delaware limited liability company registered to do business in Kansas with a principal place of business in Kansas. Keystone and Haunschild are from Texas. Work performed under the Contract was performed in Arkansas City, Kansas. The amount in controversy is well in excess of $75,000. Furthermore, the parties previously agreed to: (1) submit any disputes arising from the Contract to the exclusive jurisdiction of the courts of the State of Kansas, (2) waive any defense based on lack of personal jurisdiction or sufficiency of service of process, and (3) resolve any disputes using Kansas law. Consequently, the Court has subject matter jurisdiction over this action.

Plaintiff obtained personal service on Haunschild both individually and in his capacity as an officer, registered agent, or proprietor of several business entities identified in the Contract, including: Decisions Energy Management (d/b/a Keystone Energy Services), Decisions Energy Management (d/b/a Keystone LLC), Decisions Energy Management (d/b/a Keystone), and Decisions Energy Management (d/b/a KeyStone Energy).

---

[6] Memorandum in Support of Default Judgment, Doc. 18, p. 12.   Plaintiff now seeks damages totaling $2,268,193.73, assessed as follows: (1) $1,016,827.07 for breach of contract, (2) $251,366.66 for fraud, and (3) $1,000,000 for punitive damages.

With the exception of Decisions Energy Management, LLC and Keystone Energy, LLC, Plaintiff's searches failed to confirm the existence of the other various legal entities identified in the Contract and other documents. Consequently, it is reasonable for the Court to conclude that the Keystone Defendants, under their various names, were nothing more than Haunschild doing business as Keystone.

Plaintiff caused summons to be issued to all potential legal entity names known to it through internet searches and to Haunschild at three potential residential addresses. All nine summonses were personally served on Haunschild on February 3, 2014. Service of process was had on the registered agent for Keystone Energy, LLC on March 3, 2014.[7] Consequently, the record establishes personal jurisdiction over all Defendants, including Haunschild and the various entity names under which he purported to do business in his relationship with Plaintiff.

## IV.    Legal Standard

Federal Rule of Civil Procedure 55(a) allows a default entry against a party when that party has "failed to plead or otherwise defend" itself. Following entry of default by the clerk, Rule 55(b)(2) permits a district court to enter default judgment. In cases where a plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk, upon a plaintiff's request, must enter judgment for that amount and costs.[8] However, in cases where a plaintiff's claim is not for a sum certain or cannot be made certain by computation, the party must apply to the court for a default judgment.[9]  "The court may conduct hearings or make

---

[7] Docs. 5-13.

[8] FED. R. CIV. P. 55(b)(1).

[9] FED. R. CIV. P. 55(b)(2).

referrals . . . to determine the amount of damages."[10]   "A trial court is vested with broad discretion in deciding whether to enter a default judgment."[11]

"Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief."[12]  All well-pleaded factual allegations of a plaintiff's complaint must be taken as true, except for those relating to the amount of damages.[13] Accordingly, Plaintiff's claims that all Defendants breached the Contract and that Defendants Decisions Energy Management, LLC and Haunschild committed acts of fraud are deemed admitted.

## V.    Analysis

### A.    Breach of Contract

Kansas law limits recovery of damages as a result of breach of contract to "those damages which may fairly be considered as arising in the usual course of things, from the breach itself, or as may reasonably be assumed to have been within the contemplation of both parties as a probable result of the breach."[14]  Plaintiff seeks damages for breach of the Contract for: (1) the unrealized energy savings, i.e. the difference between the guaranteed energy savings stated in the Contract and the actual energy savings generated from Defendants' partial performance, and (2) the estimated cost to complete the energy savings project as contemplated by the Contract.

---

[10] FED. R. CIV. P. 55(b)(2)(B).

[11] *DeMarsh v. Tornado Innovations, L.P.*, 2009 WL 3720180, at *2 (D. Kan. Oct. 15, 2009) (quoting *Galloway v. Hadl*, 2008 WL 5109758, at *1 (D. Kan. Dec. 2, 2008)).

[12] *Id.* (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. 1998)).  *See also Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 n.11 (10th Cir. 2003) (noting that, after an entry of default, a defendant cannot defend a claim on the merits).

[13] *DeMarsh*, 2009 WL 3720180, at *2 (citing *Beck v. Atl. Contracting Co.*, 157 F.R.D. 61, 64-65 (D. Kan. 1994)).

[14] *Kansas State Bank v. Overseas Motosport, Inc.*, 222 Kan. 26, 27, 563 P.2d 414 (1977).

## 1.  Unrealized Energy Savings

The Contract guaranteed that Plaintiff would realize energy savings of $659,986.92 in each of the first two years after completion of the project.[15]   Because the Contract also guaranteed that the project would be completed no later than October 21, 2012, the Court uses October 21, 2014, for purposes of calculating any unrealized energy savings.  Plaintiff admits that, although the project was never completed, it has realized energy savings over the past two years of approximately $200,000 per year, for a total of $400,000.[16]   This figure is reasonably believed to include energy savings that will be obtained before October 21, 2014, when the two-year guarantee period expires.

Consequently, Plaintiff is entitled to damages in the amount of $919,973.84 for its unrealized energy savings ($659,986.92 x 2 - $400,000).  These damages arise from the Contract and were certainly contemplated by both parties as a consequence of a breach of the Contract, as evidenced by Defendants' inclusion of the energy savings guarantee.

## 2.  Cost to Complete Project

The total Contract price was $1,367,529.00.[17]   To date, Plaintiff has paid Defendants $1,214.382.23.[18]   Plaintiff reasonably estimates that the anticipated cost of completion of the project is $250,000.[19]   This figure is based on information known to Plaintiff, but is admittedly

---

[15] Declaration of Thomas H. Minton, Doc. 18-1, p. 18.

[16] Declaration of Thomas H. Minton, Doc. 18-1, p. 4.

[17] Complaint, Doc. 1, p. 70.

[18] Declaration of Thomas H. Minton, Doc. 18-1, p. 5.

[19] The $250,000 reflects Plaintiff's initial estimation of the cost to complete the project.  At oral argument, and in documents submitted subsequent to the argument, Plaintiff estimated its cost of completion to be $282,000. Because Plaintiff has consistently used the $250,000 figure, and, in fact, even in documents submitted subsequent to

without the requested input from Defendants to determine the full nature and scope of the work to be completed.  Therefore, the total cost to Plaintiff to complete the project is $1,464,382.23 ($1,214,382.23 + $250,000).  This total exceeds the agreed upon Contract price by $96,853.23 ($1,464,382.23 - $1,367,529.00).  The Court concludes that this item of damages arises from the breach and is therefore recoverable under Kansas law.

### 3.  Summary of Damages for Breach of Contract

Based on the evidence submitted, the Court finds that Plaintiff is entitled to judgment in its favor for damages for breach of contract in the amount of $1,016,827.07 plus interest at the applicable judgment rate of interest thereafter.

## B.  Fraud

Under Kansas law, to state a claim for fraud, a plaintiff must allege: (1) false or untrue representations were made as a statement of material fact; (2) the representations were known to be false or untrue by the party making them, or were recklessly made without knowledge concerning them; (3) the representations were intentionally made for the purpose of inducing another party to act upon them; (4) the other party reasonably relied and acted upon the representations made; and (5) the other party sustained damage by relying upon the representations.[20]  Here, Plaintiff alleges that Defendants committed two acts of fraud: (1) inducing Plaintiff to provide one-half of the insurance premium to obtain the energy savings warranty, and (2) inducing Plaintiff to provide a payment in the amount of $200,000 to satisfy Defendants' subcontractors.  Based upon review of the evidence, the Court agrees.

---

the oral argument, calculates its actual damages based on this initial figure, the Court uses $250,000 as Plaintiff's cost to complete the project.

[20] *See Slaymaker v. Westgate State Bank*, 241 Kan. 525, 531, 739 P.2d 444 (1987).

### 1. Insurance Premium Payment

On July 17, 2012, Plaintiff paid Defendants $24,750 for one-half of the quoted insurance premium for insurance coverage that would have satisfied Defendants' obligations with regard to the energy savings guarantee stated in the Contract.[21]  This energy savings guarantee and the insurance coverage to fund that guarantee were a critical part of the agreement between Plaintiff and Defendants.  During his testimony, Minton, Plaintiff's controller, indicated that Plaintiff was not satisfied only with Defendants' stated guarantee of the energy savings and that the energy savings warranty was "absolutely necessary" to Plaintiff going forward with the Contract.  Defendants did not succeed in obtaining this energy savings warranty.  Furthermore, at no time did Defendants relay to Plaintiff that they could not obtain the energy savings warranty from Energi because of Defendants' refusal to provide the required three years of audited financial records to Energi.  Nor did Defendants inform Plaintiff that Energi had, in fact, returned Plaintiff's check for its share of the insurance premium in January 2013.

As a result, the Court finds that Defendants made false statements of material fact, known to be false, or made recklessly, that were intentionally made to induce Plaintiff to act.  The Court further finds that Plaintiff reasonably relied on these false statements and therefore suffered damages in the amount of $24,750.

### 2. Payment to Subcontractors

On June 14, 2013, Defendants requested a payment of $200,000 from Plaintiff in order to pay two of their subcontractors, namely Graham Electric Co. and Mining Controls, LLC.[22]  Although no additional payment was due from Plaintiff at that time, Minton testified that

---

[21] Declaration of Thomas H. Minton, Doc. 18-1, pp. 3, 10.

[22] Declaration of Thomas H. Minton, Doc. 18-1, p. 2.

Plaintiff agreed to make the partial payment because Defendants had, in April 2013, finally delivered and installed a large capacitor that was a crucial and significant portion of the project. Plaintiff made this requested payment based on assurances that Defendants would utilize this $200,000 payment as requested.  Defendants failed to pay either subcontractor.  This non-payment resulted in the filing of Subcontractor's Mechanics Liens totaling just under $200,000.[23] Defendants thereafter abandoned the project.

Based on the evidence provided, the Court finds that Defendants made false statements of material fact, known to be false, or made recklessly, that were intentionally made to induce Plaintiff to act.  The Court further finds that Plaintiff reasonably relied on these false statements and therefore suffered damages in the amount of $200,000.

### 3.  Summary of Damages for Fraud

Based on the evidence submitted, the Court finds that Plaintiff is entitled to judgment in its favor for damages for fraud, calculated as follows: (1) $24,750 plus interest of $4,950, calculated at the statutory rate of ten percent (10%) per year as of July 17, 2014, for the fraudulently induced insurance premium; and (2) $200,000 plus interest of $21,666.66, calculated at the statutory rate of ten percent (10%) per year as of July 13, 2014, for the fraudulently induced subcontractor's payments.  Therefore, the total damages due to Plaintiff for fraud are $251,366.66, plus interest at the applicable judgment rate of interest thereafter.  Such damages are issued jointly and severally against Defendants Decisions Energy Management, LLC and Douglas G. Haunschild.

---

[23] Declaration of Thomas H. Minton, Doc. 18-1, p. 2.

C.     **Punitive Damages**

Under K.S.A. § 60-3702(c), the trier of fact may award punitive damages if it determines that a defendant has "acted toward the plaintiff with willful conduct, wanton conduct, fraud, or malice." Section 60-3702(a) sets forth the statutory scheme for awarding such damages under Kansas law.  It provides as follows:

> In any civil action in which exemplary or punitive damages are recoverable, the trier of fact shall determine, concurrent with all other issues presented, whether such damages shall be allowed.  If such damages are allowed, a separate proceeding shall be conducted by the court to determine the amount of such damages to be awarded.[24]

At that separate proceeding, the court may consider the following factors:

1.  The likelihood at the time of the alleged misconduct that serious harm would arise from the defendant's misconduct;

2.  The degree of the defendant's awareness of that likelihood;

3.  The profitability of the defendant's misconduct;

4.  The duration of the misconduct and any intentional concealment of it;

5.  The attitude and conduct of the defendant upon discovery of the misconduct;

6.  The financial condition of the defendant; and

7.  The total deterrent effect of other damages and punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, compensatory, exemplary and punitive damage awards to persons in situations similar to those of the claimant and the severity of the criminal penalties to which the defendant has been or may be subjected.[25]

---

[24] K.S.A. § 60-3702(a).

[25] K.S.A. § 60-3702(b).

Any award of exemplary or punitive damages shall not exceed the lesser of the defendant's annual gross income or $5 million.[26]

Although infrequent, courts in this Circuit have awarded punitive damages in the context of a default judgment.  The idea that punitive damages may be awarded in cases of default judgment stems back to Judge Lungstrum's opinion in *Beck v. Atlantic Contracting Company, Inc.*[27]  There, the court granted the plaintiff's application for default judgment but noted, with regard to the plaintiff's request for punitive damages, that it had been "unable to find any reported cases in Kansas discussing the imposition of punitive damages on a defendant against whom a default judgment has been entered due to the defendant's failure to appear in the case."[28] This presented an issue with regard to the amount of discovery the plaintiff could conduct, especially in terms of analyzing the factors set forth in K.S.A. § 60-3702(b).  However, the court concluded that this lack of discovery "should [not] be fatal to plaintiff's punitive damage claim."[29]  Based on the entire record, the *Beck* court, in addition to a grant of default judgment, awarded the plaintiff $110,000 in punitive damages.[30]

More recently, in *Meitler Consulting, Inc. v. Dooley,*[31] Magistrate David J. Waxse awarded $48,000 in punitive damages to a plaintiff who had proven, through the use of a default

---

[26] K.S.A. § 60-3702(e).

[27] 1994 WL 608598 (D. Kan. Oct. 14, 1994).

[28] *Id*. at *1.  The court *did* note, however, that Kansas courts had awarded punitive damages in default situations in the context of failure to comply with discovery orders.  *See Binyon v. Nesseth*, 231 Kan. 381, 646 P.2d 1043 (1982) (entering default judgment for $9,326.06 in actual damages and $100,000 in punitive damages); *Mansfield Painting and Decorating, Inc. v. Budlaw Services, Inc.*, 3 Kan. App. 2d 77, 589 P.2d 643 (1979) (entering default judgment for $6,308.87 in actual damages and $5,000 in punitive damages).

[29] *Beck*, 1994 WL 608598, at *1.

[30] *Id*.

[31] 2007 WL 1834008 (D. Kan. June 26, 2007).

judgment, a defendant's willful and malicious conversion as well as misappropriation of trade secrets.[32]  In *Meitler*, the plaintiff filed a complaint against the defendant alleging breach of contract, conversion, and misappropriation of trade secrets.  As a result of the defendant's failure to respond or comply with court orders, the court entered default judgment in favor of the plaintiff.  The court then directed the plaintiff to file an amended application for default judgment "that would permit the Court to determine the amount and nature of the judgment to be entered against [the defendant]."[33]  In this amended application, the plaintiff sought, among other things, compensatory and punitive damages.[34]  Following a hearing on the issue of damages in which it ascertained information relevant to the factors set forth in K.S.A. § 60-3702(b), and accepting as true that the defendant acted willfully and maliciously based on its order of default, the court ultimately awarded punitive damages against the defendant in the amount of $48,000.[35]

Here, Plaintiff seeks an award of punitive damages in the amount of $1,000,000, which Plaintiff calculates as approximately four times the amount of actual damages awarded for fraud

---

[32] *Id.* at *14.

[33] *Id.* at *3.

[34] *Id.* at *1.

[35] *Meitler*, 2007 WL 1834008, at *14.   For additional awards of punitive damages in the context of default judgment, *see Carter v. Ellis*, 2014 WL 806178 (D. Kan. Feb. 28, 2014) (granting default judgment based on the defendant's failure to appear and awarding punitive damages in the amount of $50,000); *Baer v. Daley*, 2012 WL 5200029 (D. Kan. Oct. 22, 2012) (denying a motion to set aside the grant of default judgment and awarding punitive damages); *Guddee v. Evergreen Realty Group, LLC*, 2012 U.S. Dist. LEXIS 49186 (D. Kan. Apr. 9, 2012) (adopting the magistrate's report and recommendation granting default judgment after failure to appear and awarding punitive damages in the amount of $100,000); *Harshaw Research, Inc. v. Tyler*, 2010 U.S. Dist. LEXIS 105332 (D. Kan. Oct. 1, 2010) (granting default judgment and awarding the plaintiff $10,000 in punitive damages). *Cf. Olivas v. Bentwood Place Apts., LLC*, 2010 WL 2952393 (D. Kan. July 26, 2010) (granting default judgment but not awarding punitive damages.  By way of explanation as to the denial of punitive damages, the court explained that "[i]n ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for default judgment.  Although punitive damages *are permitted upon a proper showing*, at the hearing, plaintiff did not request punitive damages, and is thus not entitled to punitive damages.") (emphasis added).

and 200 times its out-of-pocket expenses.  In accordance with Kansas law, the Court undertakes an analysis of the factors listed in K.S.A. § 60-3702(b).

**1.  Likelihood of serious harm**

The Court finds it was likely that Defendants' failure to secure the energy savings warranty and pay the subcontractors would result in harm to Plaintiff.  Plaintiff had no other guarantee of realizing the difference between the guaranteed energy savings and its actual energy savings.  The entire point of the Contract was for Plaintiff to realize these energy savings.  It also seems clear that the failure to pay the subcontractors would result in harm since the subcontractors had already completed their work on Plaintiff's facility.  This factor weighs in favor of a substantial punitive damages award.

**2.  The degree of Defendants' awareness of the likelihood of harm**

It is undisputed that Defendants were aware of the likelihood that their misconduct would injure Plaintiff.  In signing the Contract, Defendants knew how important the energy savings guarantee was to Plaintiff and that a failure to live up to this guarantee would defeat one of the main points of the Contract.  The Court cannot help but assume that Defendants also knew that failure to pay the subcontractors would likely result in the subcontractors taking some kind of legal action to obtain the compensation they were due.  Thus, this factor also weighs in favor of a substantial punitive damages award.

**3.  The profitability of Defendants' misconduct**

Because Defendants failed to answer Plaintiff's Complaint or the Clerk's Entry of Default and failed to attend the default judgment hearing, the extent to which Defendants profited from the misconduct is not known.  However, the fact that Plaintiff's evidence on this factor is incomplete or even non-existent due to Defendants' failure to participate in this action

should not defeat Plaintiff's claim for punitive damages.  As Judge Lungstrum noted in *Beck*, "[t]he court does not believe that a defendant's default, resulting in a plaintiff's inability to discover evidence on each of the criteria spelled out in K.S.A. 60-3702(b), should result in barring a plaintiff from the recovery of punitive damages."[36]  To do so would essentially reward Defendants for refusing to participate and defend this action.

Therefore, although it is not particularly quantifiable, the Court is willing to infer that, at least, Defendants' motive was economic and that they received *some* benefit and/or profit from this misconduct.  As such, this factor weighs in favor of a substantial punitive damages award.

### 4. The duration and concealment of the misconduct and Defendants' attitude and conduct upon discovery of the misconduct

Accepting as true the allegations of the Complaint, the Court finds that Defendants breached the Contract when they failed to obtain the energy savings warranty, sometime after July 17, 2012, and before January 2013.  Defendants never informed Plaintiff of their failure to obtain the energy savings warranty and failed to return Plaintiff's check even after the check had been returned by Energi to Keystone.  Furthermore, Defendants also failed to inform Plaintiff that they never paid the subcontractors.  Defendants again breached the Contract when they abandoned the project in August 2013 without any explanation.  These facts weigh in favor of a substantial punitive damages award.

---

[36] *Beck*, 1994 WL 608598, at *1.

**5.  The financial conditions of Defendants**

Under this factor, the Court may consider Defendants' current financial condition, including their net worth.[37]  Due to Defendants' failure to participate in this action, the record is devoid of any evidence with regard to this information.  As such, this factor neither weighs in favor or against a substantial punitive damages award.

**6.  The total deterrent effect on Defendants**

This factor "typically looks to whether the party against whom punitive damages are to be assessed will be required to pay, or has already paid, actual or compensatory damages to the plaintiff and will be, or has been, punished in another proceeding, such as a criminal proceeding."[38]  As stated earlier, Plaintiff is entitled to compensatory damages in the amount of $1,016,827.07 for breach of contract and $251,366.66 for fraud for a total award of $1,268,193.73.  Consequently, the Court takes into consideration this substantial compensatory award in its determination of punitive damages.  The Court therefore determines that a total sum of $250,000, a sum approximately equal to the amount of fraud damages, is reasonable.

**7.  Analysis under K.S.A. § 60-3702(e)**

Before the Court may award this sum, however, it must ensure that it does not exceed the ceiling set forth in K.S.A. § 60-3702(e).  Under this subsection,

No award of punitive damages may exceed the lesser of: (1) the defendant's highest gross annual income earned for any one of the five years immediately before the act for which such damages are awarded, unless the court determines such amount is clearly inadequate to penalize the defendant, then the court may

---

[37] *See Heartland Surgical Specialty Hosp., LLC v. Midwest*, 2007 WL 950282, at *14 (D. Kan. Mar. 26, 2007).

[38] *Meitler*, 2007 WL 1834008, at *13 (citing *SuperFilm of America, Inc. v. UCB Films, Inc.*, 2005 WL 2367546, at *17 (D. Kan. Sept. 27, 2005)).

award up to 50% of the net worth of the defendant, as determined by the court; or (2) $5 million.[39]

Here, the Court has no information as to the highest gross annual income of any Defendant.  This evidence is lacking due to Defendants' failure to participate in this action in any way.  Nevertheless, given the entire record in this matter, the Court finds the punitive damages award to be appropriate based upon the nature of Defendants' conduct.  Defendants have been given ample opportunity to present evidence regarding the factors enumerated in K.S.A. § 60-3702(b) and provide information regarding their annual gross income as is pertinent to K.S.A. § 60-3702(e).  For whatever reason, Defendants have failed to provide any of this information.  Therefore, after taking into account all of the evidence, Defendants' conduct, and the statutory considerations, the Court determines that the sum of $250,000 is sufficient to accomplish the purpose of a punitive damage award.

**IT IS THEREFORE ORDERED** that Plaintiff's Motions for Default Judgment (Docs. 17 and 26) are hereby **GRANTED**.

**IT IS FURTHER ORDERED** that default judgment is entered in favor of Plaintiff and against Defendants Decisions Energy Management (d/b/a Keystone, LLC); Decisions Energy Management (d/b/a Keystone); Decisions Energy Management (d/b/a Keystone Energy, a/k/a KeyStone Energy); Decisions Energy Management, LLC; Keystone Energy, Inc.; Keystone Energy, LLC; and Douglas G. Haunschild, jointly and severally, for compensatory damages for breach of contract in the amount of $1,016,827.07, to bear interest at the applicable post-judgment rate, and for its costs incurred herein.

---

[39] K.S.A. § 60-3702(e).

**IT IS FURTHER ORDERED** that default judgment is entered in favor of Plaintiff and against Defendants Decisions Energy Management, LLC and Douglas G. Haunschild, jointly and severally, for:

    (1) Fraud, in the amount of $251,366.66, to bear interest at the applicable post-judgment rate, and for its costs incurred herein; and

    (2) Punitive damages, in the amount of $250,000.00, to bear interest at the applicable post-judgment rate, and for its costs incurred herein.

**IT IS FURTHER ORDERED** that Plaintiff shall timely submit a bill of costs and motion for award of attorney's fees due pursuant to the Contract, if any.

**IT IS SO ORDERED**.

Dated this 4th day of August, 2014.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE